**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JASON J. KRON**                                    **CIVIL ACTION**

**versus**                                                  **NO. 09-7572**

**ROBERT C. TANNER, WARDEN**            **SECTION: "R" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Jason J. Kron, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana.  On August 10, 2005, he pleaded guilty to possession of

cocaine in violation of Louisiana law.[1]  On that same date, he also pleaded guilty to being a multiple offender and was sentenced as such to a term of eight years imprisonment.[2]

On August 1, 2007, the state district court granted petitioner an out-of-time appeal.[3] On March 25, 2008, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction.[4]  The Louisiana Supreme Court then denied his related writ application on October 24, 2008.[5]

On January 9, 2009, petitioner filed with the state district court an application for post-conviction relief.[6]  That application was denied on January 21, 2009.[7]  However, on April 1, 2009, the Louisiana Fifth Circuit Court of Appeal granted petitioner's related writ application challenging that ruling and remanded the matter to the state district court.[8]  The state district court

---

[1] State Rec., Vol. II of VI, transcript of August 10, 2005; State Rec., Vol. I of VI, minute entry dated August 10, 2005; State Rec., Vol. I of VI, guilty plea form.

[2] State Rec., Vol. II of VI, transcript of August 10, 2005; State Rec., Vol. I of VI, minute entry dated August 10, 2005.

[3] State Rec., Vol. II of VI, Order dated August 1, 2007.

[4] State v. Kron, 983 So.2d 117 (La. App. 5th Cir. 2008) (No. 07-KA-1024); State Rec., Vol. VI of VI.

[5] State v. Kron, 992 So.2d 1039 (La. 2008) (No. 2008-KO-0813); State Rec., Vol. VI of VI.

[6] State Rec., Vol. V of VI.

[7] State Rec., Vol. V of VI, Order dated January 21, 2009.

[8] State v. Kron, No. 09-KH-157 (La. App. 5th Cir. Apr. 1, 2009) (unpublished); State Rec., Vol. V of VI.

then again denied relief on April 23, 2009.[9]  The Louisiana Fifth Circuit Court of Appeal thereafter

denied his related writ application,[10] and he did not seek review by the Louisiana Supreme Court.

On December 1, 2009, petitioner filed the instant federal application for *habeas*

*corpus* relief.[11]  In support of his application, he asserts the following claims:

1.     The trial court erred in accepting petitioner's guilty plea

because it was not knowing and voluntary; and

2.     Petitioner received ineffective assistance of counsel.

The state concedes that petitioner's application is timely filed and raises no procedural objections

to his claims.  However, the state argues that the claims should be dismissed as meritless.[12]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law,

questions of fact, and mixed questions of law and fact.  The amendments "modified a federal habeas

court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and

to ensure that state-court convictions are given effect to the extent possible under law."  <u>Bell v.</u>

---

[9] State Rec., Vol. V of VI, Order dated April 23, 2009.

[10] <u>Kron v. State</u>, No. 09-KH-408 (La. App. 5th Cir. June 26, 2009) (unpublished); Rec. Doc. 3-5, p. 99.

[11] Rec. Doc. 3.

[12] Rec. Doc. 11.

Cone, 535 U.S. 685, 693 (2002).  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this

– 4 –

> Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

## Facts

Because petitioner pleaded guilty, the underlying facts of this case were not developed at a trial. However, in its decision on direct appeal, the Louisiana Fifth Circuit Court of Appeal took note of the facts as summarized in the police report:

The police report indicates officers were patrolling a high crime area when they observed defendant engage in a hand-to-hand transaction with another individual. The officers approached the subjects at which time defendant attempted to flee. After a brief struggle, he was arrested and a search incidental to the arrest revealed a crack pipe and a push rod. Also, a large piece of crack cocaine was found on the ground where defendant was standing when he attempted to flee. According to the police report, the officers believed defendant dropped the cocaine in an effort to hide it.[13]

## Guilty Plea

In the state court proceeding, petitioner pleaded guilty. "Because a guilty plea involves the waiver of several constitutional rights, it must be made intelligently and voluntarily." United States v. Reyes, 300 F.3d 555, 558 (5th Cir. 2002). Petitioner claims that his guilty plea was not knowing and voluntary and, therefore, the trial court erred in accepting it.

On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> [D]efendant argues the trial court erred in accepting his guilty plea. He contends he was pressured into pleading guilty and, therefore, his plea was not knowing and voluntary. Defendant claims he was reluctant to plead guilty, as evidenced by the plea colloquy transcript, because he did not understand what was going on and was not convinced the plea was in his best interest or that his attorney was protecting his interests. He further asserts he was pressured to plead guilty to offenses that were outside the plea agreement.[FN3] Defendant filed a Supplemental *Pro Se* Brief raising the same arguments, claiming his plea was unknowing and involuntary.
>
> > [FN3] Defendant is referring to the misdemeanor charges to which he pled guilty at the same time as the felony offense of possession of cocaine.

---

[13] State v. Kron, 983 So.2d 117, 118-19 (La. App. 5th Cir. 2008) (No. 07-KA-1024); State Rec., Vol. VI of VI.

Misdemeanor convictions are normally not reviewable on appeal, but rather are reviewable by an application for writ of review. LSA-C.Cr.P. art. 912.1(C)(1). Of note, the misdemeanor offenses were charged in a separate Bill of Information that is not a part of the appellate record. Furthermore, defendant does not challenge his misdemeanor convictions and, thus, the validity of any plea related thereto is not before us on appeal.

Under LSA-C.Cr.P. art. 559(A), the trial court has the discretion to permit a defendant to withdraw his guilty plea at any time prior to sentencing. Once a defendant has been sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn and only by appeal or post-conviction relief. State v. McCoil, 05-658, p. 7 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124. A guilty plea is constitutionally infirm when it is not entered freely and voluntarily, if the Boykin[FN4] colloquy was inadequate, or when a defendant is induced to enter the plea by a plea bargain and that bargain is not kept. Id.

[FN4] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Generally, a denial of a Motion to Withdraw a Guilty Plea will not be reversed on appeal if the record clearly shows the defendant was informed of his rights and the consequences of his plea, and that the plea was entered into voluntarily. State v. Stewart, 03-976 (La.App. 5 Cir. 12/30/03), 862 So.2d 1271. A mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. State v. Green, 03-410 (La.App. 5 Cir. 10/28/03), 860 So.2d 237, writ denied, 03-3228 (La. 3/26/04), 871 So.2d 346. Without fraud, intimidation or incompetence of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel. Id.

The record indicates that prior to the commencement of trial, defendant withdrew his not guilty plea and pled guilty to possession of cocaine as charged. The trial court conducted a plea colloquy with defendant advising him of his right to a jury trial, right to confront his accusers, and right against self-incrimination. Defendant indicated he understood his rights and wished to waive them.

The trial court also reviewed the sentencing ranges for possession of cocaine, including the maximum enhanced sentence defendant could receive as a multiple offender, and specifically advised defendant he would receive eight years as a third felony offender under the plea agreement. At that time, defendant responded that he was pleading guilty under pressure. The trial court explained the matter could proceed to trial, but noted the State would multiple bill defendant as a fourth felony offender, which would result in a possible sentence of 20 years to life imprisonment. Defendant replied he was "taking the plea," but added he was doing so because he was "under pressure." Defendant never elaborated what type of pressure to which he was referring. The trial judge stated she would not accept the plea if it was under pressure. Defendant then responded, "I accept the plea."

Thereafter, the trial judge specifically advised defendant that no one could force him to plead guilty and asked if anyone had used force, intimidation, coercion or promise of reward for the purpose of forcing him to plead guilty. Defendant replied that the State promised him that he would not be "quad billed." In response to defendant's questions about his sentence, the trial judge again explained his sentence under the plea bargain. The trial judge told defendant he would receive five years and then an eight-year sentence on the triple bill.

The trial court explained to defendant that by pleading guilty he was admitting he committed the charged crime. Defense counsel requested the plea be entered under <u>Alford</u>,[FN5] but the trial court refused to accept an <u>Alford</u> plea. The trial court asked defendant to give a factual basis for his plea to which defendant stated that according to the police, he possessed crack cocaine. He elaborated by stating, "For my best interest, I'm taking the eight years so I don't receive life." Defendant then admitted he dropped the cocaine on the ground.

[FN5] <u>North Carolina v. Alford</u>, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

There was also discussion about defendant's plea to three misdemeanor charges. Defendant was advised the sentences on each misdemeanor would run concurrent with his felony conviction for possession of cocaine. Defendant initially expressed confusion about his pleas to the misdemeanor charges stating he thought he was only pleading guilty to the cocaine charge. He then became belligerent

and seemingly taunted the court by stating, "[g]o ahead and give me the misdemeanors."[FN6]  After the outburst, the trial court asked defendant if he was pleading guilty to the misdemeanors of battery on a police officer and possession of drug paraphernalia to which defendant affirmatively replied.

> [FN6] Defendant was ultimately held in contempt in court based on his use of foul language in the courtroom.

Towards the end of the plea colloquy, the trial judge asked if defendant was satisfied with the explanation of his rights given by his attorney and the court.  Defendant responded, "I stay silent on that." The trial court called for the jury at which time defendant explained that he did not know how to answer her question.  Defense counsel advised defendant to remain quiet, explained to defendant that he was "about to make a big mistake," and indicated that he would speak to defendant when it was over.  The trial court then asked if defendant had any questions and defendant responded he would ask his attorney.  Thereafter, the trial court accepted defendant's guilty plea and stated:

> I'm entirely satisfied the defendant was aware of the nature of the crime to which he's pleading guilty, the defendant did, in fact, commit said crime, understands the consequences of said plea of guilty, has made a knowing, intelligent, free and voluntary act of pleading guilty to the above-mentioned crime, there's a factual basis for the acceptance of this plea.

On appeal, defendant claims his guilty plea was not voluntary because he was pressured into pleading guilty.  Defendant does not explain how he was pressured into pleading guilty, but seems to suggest he did not understand the proceedings, his attorney was not acting in defendant's best interest, and he was threatened with a longer sentence if he did not plead guilty.

A review of the record demonstrates defendant clearly understood the guilty plea proceedings.  Defendant was 30 years old and had 1 1/2 years of college education.  He admitted to two prior convictions that were the result of guilty pleas and, thus, had prior experience with the criminal justice system.  See State v. Davis, 02-387 (La.App. 5 Cir. 9/30/02), 829 So.2d 554.  The trial court reviewed defendant's Boykin rights several times throughout the plea

colloquy and each time defendant stated he understood his rights. He also acknowledged his attorney had reviewed his rights with him and that he had executed the waiver of rights form. Although defendant seemingly expressed reluctance to plead guilty at times during the plea colloquy, he refused the trial court's numerous offers of proceeding with trial. In fact, at one point, defendant adamantly stated, "I don't want to go to trial." The record reflects that each time the trial court offered to proceed to trial, defendant stated he wanted to accept the plea.

Despite defendant's claim he did not believe his attorney was acting in his best interest, the record shows otherwise. Defendant received a very advantageous plea bargain wherein he received an eight-year sentence when he was facing twenty years to life imprisonment. Specifically, in exchange for his guilty plea, the State agreed not to multiple bill defendant as a fourth felony offender. Instead, the State charged defendant as a third felony offender, which exposed defendant to a maximum sentence of ten years.

Defendant suggests he felt pressured to plead guilty because he was threatened with a "quad bill" if he proceeded to trial. "An otherwise valid plea of guilty is not rendered involuntary merely because it was entered to limit the possible maximum penalty to less than that authorized by law for the crime charged." State v. Bouie, 00-2934 (La. 5/14/02), 817 So.2d 48, quoting State v. Compton, 367 So.2d 844 (La. 1979). In Bouie, the Louisiana Supreme Court explained that there is no inherent coerciveness when a trial judge explains the possible penalties a defendant faces if he went to trial and was convicted by a jury because the advice concerns information that an accused should possess to enter a knowing and intelligent guilty plea. Id. at p. 11, 817 So.2d 55.

In State v. Guilbeau, 02-972 (La.App. 3 Cir. 2/5/03), 838 So.2d 160, writ denied, 03-0553 (La. 6/6/03), 848 So.2d 538, the defendant sought to withdraw his guilty plea on the basis he was pressured to plead guilty by his attorney who advised him he would "go straight to Angola to serve twenty years" if he did not plead guilty. At the hearing on the Motion to Withdraw His Guilty Plea, the defendant claimed he repeatedly told his attorney he wanted to go to trial because he was innocent. The defendant stated his attorney pressured him by telling him not to be stupid and that he would get twenty years if he went to trial.

In upholding the trial court's refusal to allow the defendant to withdraw his guilty plea, the Third Circuit noted that the defendant was given several opportunities at the plea hearing to proceed to trial, but that he refused and chose to enter the guilty plea. It determined

the record supported the trial court's reasons for denying the Motion to Withdraw noting that the defendant had one year of college education, understood the guilty plea proceedings, was advised several times of his rights, but yet refused to proceed to trial despite several opportunities to do so during the plea hearing, and that the defendant knowing and voluntarily elected to take a sure sentence of ten to thirty years as opposed to taking a chance on trial where he would face twenty to sixty years.

Also, in <u>State v. Irving</u>, 35,795, pp. 2-6 (La.App. 2 Cir. 5/8/02), 818 So.2d 289, 291-93, <u>writ denied</u>, 02-1614 (La.12/19/02), 833 So.2d 328, the defendant claimed he was pressured into pleading guilty by the pressure and incompetence of his attorneys. On the second day of trial, defense counsel advised the trial court of the State's plea offer, but stated the defendant wished to reject the plea contrary to their advice due to the evidence against the defendant and the potential sentencing exposure. A recess was granted and the defendant subsequently accepted the plea. The defendant later sought to withdraw his plea on the basis he did not believe his attorneys would have effectively defended him if he had not accepted the plea and he feared his sentence if he were convicted at trial. The Second Circuit stated that any evidence of emotional conflict by the defendant at the time of his plea was nothing more than the pressure that is inherent in the guilty plea process. The court explained that the emotional conflict could "be viewed in no other way than that which would be experienced by any defendant faced with the choice of admitting criminal culpability prior to the completion of trial or continuing the trial process." <u>Id</u>. at p. 6, 818 So.2d at 293. The court concluded that "[s]uch emotional conflict fails to qualify as the type of coercion or intimidation necessary to invalidate a plea." <u>Id</u>.

Likewise, in the present case, we find defendant's initial reluctance to plead guilty is the same reluctance any defendant faces in pleading guilty. The record shows defendant was advised numerous times of his <u>Boykin</u> rights and that he stated he understood and wished to waive them. Defendant was given several opportunities during the plea hearing to proceed to trial, but he adamantly refused and elected to plead guilty. The reality of defendant's potential life sentence understandably provoked fear in defendant. However, as the Louisiana Supreme Court has stated, there is no inherent coerciveness when a trial judge explains the possible penalties a defendant faces if he went to trial and was convicted by a jury. <u>State v. Bouie</u>, *supra*. Defendant's guilty plea is not rendered involuntary simply because he entered the plea to

> limit his possible maximum penalty to less than that authorized by
> law for the crime charged.
>
>      Accordingly, we find defendant's guilty plea to be
> constitutionally valid. The record shows he was adequately advised
> of his <u>Boykin</u> rights and his guilty plea was knowing and voluntary.
> Thus, the trial court did not err in accepting defendant's guilty plea
> to possession of cocaine.[14]

The transcript of the plea colloquy fully supports the state court's findings and belies

petitioner's contentions. During the colloquy, petitioner was clearly advised of his rights and

indicated that he understood them.[15] The Court advised petitioner that he was pleading guilty to a

charge that he possessed cocaine on May 3, 2005.[16] He was further advised that the maximum

sentence for that crime was five years; however, he was told that if the state was able to prove its

contention that he was a quadruple offender, then he faced an enhanced sentence of twenty years to

life.[17] When petitioner then indicated that he was being pressured into pleading guilty, the trial

judge instructed him that she would not accept a plea entered under pressure:

> MR. KRON:
>      Regardless, I'm – only reason why I'm pleading this is under
> pressure to plead guilty to the charge.
>
> THE COURT:
>      We can go to trial –

---

[14] <u>State v. Kron</u>, 983 So.2d at 119-23; State Rec., Vol. VI of VI.

[15] State Rec., Vol. II of VI, transcript of August 10, 2005, pp. 7 and 15-17. Petitioner also signed an "Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty." State Rec., Vol. I of VI.

[16] State Rec., Vol. II of VI, transcript of August 10, 2005, p. 8.

[17] State Rec., Vol. II of VI, transcript of August 10, 2005, pp. 8-10.

MR. BLOCK [the prosecutor]:
    Let's go to trial.

THE COURT:
    – sir, and if you're convicted –

MR. KRON:
    I'm taking the plea –

MR. LEBLANC [defense counsel]:
    Your Honor –

THE COURT:
    – we'll give you twenty to life.

MR. KRON:
    – but I'm letting you know it's under pressure.

MR. LEBLANC:
    If we could do this under Alford, Your Honor.

THE COURT:
    I can't do this under pressure, sir.  If you're under pressure,
I'm not going to take your plea.

MR.  KRON:
    I'm letting you know that I'm taking the plea, but it's because
I'm under pressure.

MR. LEBLANC:
    Mr. Kron ...

MR. KRON:
    I'm taking the plea bargain.

THE COURT:
    And if you're taking the plea under pressure, I'm not going to
accept it.

MR. LEBLANC:
    Jason, do you accept?

MR. BLOCK:

 Let the jury decide.

MR. KRON:

 Yeah, I accept the plea.  I accept the plea.

MR. LEBLANC:

 And you're doing this freely and voluntarily?

MR. KRON:

 Yes.

THE COURT:

 All right.  Do you understand the plea of guilty is your decision, no one can force you to so plead?

MR. KRON:

 Yes.

THE COURT:

 To plead guilty is your voluntary act and must be free from any vice or defect which would render your ability to plead guilty inadequate.  Has anyone used any force, intimidation, coercion or promise or reward to either you or any member of your family for the purpose of making or forcing you to plead guilty?

MR. KRON:

 The D.A. promised me what came out today, that I wouldn't get quad billed.

THE COURT:

 All right.  That's fine.[18]

_____

[18] State Rec., Vol. II of VI, transcript of August 10, 2005, pp. 10-12.

Petitioner also acknowledged that he understood that, if the plea was accepted, the state would charge him as only a third offender and that he would receive an enhanced sentence of only eight years.[19] He also admitted on the record that he was in fact guilty of possessing cocaine as charged.[20]

This Court expressly rejects petitioner's contention that his plea was involuntary because he believed that he had no choice but to plead guilty due to his attorneys' deficient representation. Throughout the extended colloquy, petitioner voiced numerous complaints; however, *not once* did he complain about his attorneys. Moreover, he clearly was not too reticent to express any such dissatisfaction during the proceeding, in that he was willing to call the judge a "[f]ucking asshole" to her face.[21] It simply inconceivable that this petitioner would have hesitated to complain about the quality of his representation if he believed that it had been inadequate in any way.

On the other hand, it is abundantly evident that petitioner pleaded guilty because he was motivated (not "pressured") to do so by his desire to avoid the possibility of receiving a life sentence as fourth offender. It is also clear that a guilty plea is not invalid solely because the decision to plead guilty was "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." Brady v. United States, 397 U.S. 742, 751 (1970). As the United States Supreme Court has noted:

---

[19] State Rec., Vol. II of VI, transcript of August 10, 2005, pp. 13-14.

[20] State Rec., Vol. II of VI, transcript of August 10, 2005, pp. 17-18.

[21] State Rec., Vol. II of VI, transcript of August 10, 2005, p. 21.

> The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government may encourage a guilty plea by offering substantial benefits in return for the plea. While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas.

United States v. Mezzanatto, 513 U.S. 196, 209-10 (1995) (quotation marks, brackets, and citations omitted).

Simply put, petitioner faced a choice: (1) go to trial and risk the severe penalty of life imprisonment based on his long history of criminal activity or (2) accept an extremely generous and beneficial plea bargain guaranteeing him an eight-year sentence in exchange for a guilty plea. That petitioner was not particularly enamored of either of those two limited choices is of no moment, and it in no way rendered his choice illusory or his plea coerced. Accordingly, the state district court judge did not err in accepting the plea and federal *habeas corpus* relief is not warranted based on this claim.

### Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel. In the state post-conviction proceedings, the state district court rejected the ineffective assistance claim,[22] holding:

---

[22] Petitioner first raised his ineffective assistance claims on direct appeal; however, the state courts declined to rule on them on direct review, holding that such claims should be asserted in post-conviction proceedings. State v. Kron, 983 So.2d 117, 123 (La. App. 5th Cir.), writ denied, 992 So.2d 1039 (La. 2008); State Rec., Vol. VI of VI.

Petitioner now seeks post-conviction relief, claiming ineffective assistance of counsel, arguing that his attorneys' performance was deficient and unreasonable, and thereby prejudiced petitioner's defense and denied him the right to a fair trial. He further alleges that counsel did not investigate, did not advise him of his rights, and did not take necessary action to preserve his rights. The petitioner claims that counsel coerced and intimidated him into pleading guilty, and that his plea was not knowing and intelligent. Petitioner claims that he was not aware that he could contest the multiple bill, and that his attorneys were ineffective in not filing motions.

The petitioner pled guilty in a negotiated plea agreement. The waiver of rights forms are in the record, as is the <u>Boykin</u> plea of guilty and sentencing transcript. These contain no unfulfilled promises but do contain the petitioner's waiver of his <u>Boykin</u> rights and his agreement that he was satisfied with the way his attorney had handled his case. The court thoroughly advised the petitioner of his rights.

In cases where the defendant has pled guilty, he must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The voluntariness of the guilty plea depends on whether counsel's advice was within the wide-range of competence demanded of attorneys in criminal cases. <u>State ex rel Graffagnino v. King</u>, 436 So2d 559 (La. 1983).

It was through petitioner's attorney's intervention that a negotiated plea agreement was entered. The court repeatedly offered the petitioner the option of going to trial. The plea agreement significantly reduced the petitioner's sentencing exposure. At trial, the petitioner was facing a sentence of 20 years to life imprisonment as a fourth felony offender on the multiple bill. Through the assistance of his attorneys, he received an eight year sentence. Upon a full review of the record, the court concludes that counsel's performance was not ineffective.[23]

---

[23] State Rec., Vol. V of VI, Order dated April 23, 2009.

The Louisiana Fifth Circuit Court of Appeal thereafter denied petitioner's related writ application,[24] and he did not seek review by the Louisiana Supreme Court.

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state court's ruling.

The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth

---

[24] Kron v. State, No. 09-KH-408 (La. App. 5th Cir. June 26, 2009) (unpublished).

Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

In the instant case, the Court finds that there is no reasonable probability that petitioner would have insisted on going to trial.  During the plea colloquy, he repeatedly refused offers to proceed to trial and insisted that he wanted to accept the plea bargain.[25]  That is hardly surprising in light of the fact that he risked a life sentence if he went to trial and yet was guaranteed a sentence of only eight years if he pleaded guilty.  By entering the plea agreement, petitioner received a substantial benefit, and this Court is unconvinced that he would have declined the

_____

[25] State Rec., Vol. II of VI, transcript of August 10, 2005, pp. 10, 11, 22, and 25.

prosecutor's offer if defense counsel had performed more effectively. Therefore, petitioner has not

established that he was prejudiced by his attorneys' performance and, as a result, any allegation of

ineffective assistance of counsel necessarily fails.[26]

---

[26] Moreover, even if petitioner's underlying allegations of ineffectiveness are considered, it is clear for the following reasons that he has failed to meet his burden to establish that the claims have merit.

Petitioner first contends that his attorneys' investigation was inadequate. However, a petitioner must have factual support for such a claim and point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Petitioner makes no such showing. For example, although he alleges that the convenience store's surveillance videotape would have proven his innocence, he offers no evidence in support of that bald, self-serving allegation. He has not established that such a videotape even existed, much less that it would have exonerated him. Similarly, he alleges that counsel failed to interview exculpatory witnesses. However, again, he offers no supporting evidence, such as affidavits from the potential witnesses, showing that those individuals would have testified at trial and that their testimony would have been favorable to the defense. See Bray v. Quarterman, 265 Fed. App'x 296, 298 (5th Cir. 2008) ("To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). He further alleges that his attorneys were ineffective for failing to have the cocaine and drug paraphernalia tested, yet he does not make the required showing that the scientific tests would have yielded any results favorable to him. See Evans, 285 F.3d at 377; Johnson v. Cain, Civ. Action No. 08-4208, 2009 WL 2366385, at *9 (E.D. La. July 29, 2009); Davis, 2008 WL 5191912, at *8. On the contrary, petitioner himself has supplied a copy of the laboratory report establishing that the evidence seized was in fact crack cocaine. Rec. Doc. 13, Exhibit A.

The Court notes that petitioner also contends that his attorneys were ineffective for failing to file motions for discovery and to suppress the evidence against him. However, again, he has not made the required showings that any beneficial evidence would have been revealed through discovery or that any evidence should have in fact been suppressed. See, e.g., Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *8 (E.D. La. Mar. 20, 2008).

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Jason J. Kron** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[27]

New Orleans, Louisiana, this fourth day of May, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.